THE COMMISSIONERS OF FIRE DISTRICT NUMBER 12 IN THE TOWNSHIP OF WOODBRIDGE, A BODY CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFFS, v. WILLIAM ZIEGENBALG, ASSESSOR OF TAXES, TOWNSHIP OF WOODBRIDGE, DEFENDANT.

TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, OF MIDDLESEX COUNTY, NEW JERSEY, PLAINTIFF, v. WILLIAM J. BARBOUR, Sr., FRANK J. BROWN, CHARLES W. LUCAS, STANLEY T. SEABASTY, AND MICHAEL KREITZ, DEFENDANTS.

Superior Court of New Jersey
Law Division

Superior Court of New Jersey
Chancery Division

Decided December 7, 1951.

608

Mr. *Bernard W. Vogel*, attorney for the plaintiffs.

Mr. *Orlando H. Dey*, attorney for the defendants.

SMALLEY, J. S. C.   Two separate suits are pending in the Law and Chancery Divisions of this court respectively.   They have been consolidated.

The suit in the Law Division is brought by the Commissioners of Fire District No. 12 in the Township of Woodbridge against the defendant, William Ziegenbalg, assessor of taxes of the Township of Woodbridge, to compel the tax assessor to perform his alleged statutory duties as imposed upon him by *R. S.* 40:151–28, namely, to assess the sum of $2,400 voted at a special meeting of the voters of the 12th Fire District of Woodbridge Township on September 18, 1950, to be used to construct a fire house in the 12th Fire District.

The defendant asserted two defenses.   First, that the meeting of September 18, 1950, was not conducted as required

by statute; second, that the fire district was abolished by resolution adopted by the township committee on February 15, 1951, and consequently is not in existence and could not receive any sums so appropriated.

The plaintiff in reply contends that the September 18, 1950, meeting was valid and charges that the meeting of February 15, 1951, when the abolition resolution was passed was, in fact, invalid and not in accordance with the requirement of the statute, and further says that even if such abolition resolution is valid, it can have no retroactive effect to nullify the statutory duty previously imposed upon the assessor to assess the moneys appropriated at the September 18, 1950, meeting and now essential to pay debts incurred in the actual construction of the fire house.

The suit in the Chancery Division, relying upon the assumption that the action of the township committee in abolishing Fire District No. 12 is valid, seeks to obtain from the Commissioners of Fire District No. 12, such cash, records, fire apparatus and equipment in the possession of the fire commissioners as of February 15, 1951.

By way of answer and counterclaim to the Chancery Division suit, the validity of the February 15, 1951, abolition resolution is again attacked and denies the duty to surrender the cash and fire apparatus even if the resolution be valid, alleging that the cash is required to pay debts lawfully incurred and commitments made by the fire district prior to February 15, 1951, and (2) that the township has no statutory or other right to the fire apparatus and equipment, and (3) the township committee was never authorized to sue for or recover the aforementioned fire apparatus or equipment.

From this recital, the following questions are involved:

1. Is the resolution appropriating $2,400 to construct a fire house, adopted at the September 18, 1950, special meeting of the voters of Fire District No. 12 valid?

2. Is the resolution abolishing Fire District No. 12, adopted at the February 15, 1951, special meeting of the Township Committee of the Township of Woodbridge, valid?

3. If the February 15, 1951, abolition resolution is valid, does it operate retroactively to nullify the statutory duty imposed on the assessor by the September 18, 1950, meeting, to assess the money then appropriated and now required to pay the debts incurred in the actual construction of the fire house?

4. If the February 15, 1951, abolition resolution is valid, are the fire commissioners under a duty to surrender to the township the cash balance and the fire apparatus in their possession on February 15, 1951?

These suits bring into consideration the statutes concerning the creation, governing and abolishing of fire districts in townships where no fire protection is furnished by the township.

R. S. 40:151–1 to R. S. 40:151–54 sets forth the pertinent statutes involving the general subject of fire districts, their creation, authority and abolition.

R. S. 40:151–1 provides as follows:

"Created by township committee in certain cases; powers

Whenever the township fails to appropriate money or provide means for protection against fire, the township committee upon the application of at least twenty freeholders of any village or district therein, shall set off by metes and bounds such village or part of the township as may be desired, into a fire district, and such village or part of the township so set off shall have all the rights and powers to provide means for protection against fires, conferred upon townships by sections 40:149–4 to 40:149–9 of this title."

R. S. 40:151–6 to R. S. 40:151–25 sets forth the requirements as to annual meetings, the method of choosing commissioners and the determining of the amount of money to be raised for the ensuing year.

R. S. 40:151–14 requires a ballot to be printed and submitted to the voters for the election of fire commissioners.

R. S. 40:151–24 requires that appropriations and other questions shall be printed on the ballot; the question to be determined shall be on the ballot for the voters' use at the time of the election.

.It will be observed that these statutes appear to be directed to the requirements in annual elections.

R. S. 40 :151–28 provides as follows:

"Purchase of lands, buildings and equipment; taxation; limitation; district meeting

The legal voters of any fire district may vote to raise, either at a special meeting called by the fire commissioners of said district or at the annual meeting of the voters of said district, a sum for a fire house and apparatus and appliances in connection therewith for fire purposes, not exceeding five mills on the dollar of the last assessed valuation of the property in said fire district. The sum so appropriated shall be assessed in the manner provided by law, and be expended by said commissioners for such fire purposes as in their judgment they may deem expedient."

R. S. 40 :151–29 provides as follows:

"Special meeting; notice; vote required

If the fire commissioners in any fire district shall deem it expedient, they may call said special meeting, whereof ten days' notice shall be given by the commissioners, or a majority thereof, by posting notices setting forth the time, place and object of the meeting in five of the most public places in the district. At said time and place the legal voters or a majority present and voting shall elect a chairman and clerk of the meeting and determine the amount to be raised for the fire house and apparatus and appliances in connection therewith for fire purposes, not exceeding the sum of five mills on the dollar of the last assessed valuation of property in the district."

R. S. 40 :151–42, provides as follows:

"Districts abolished by resolution; disposition of funds

The township committee of any township wherein a fire district shall have been organized may, by resolution authorized in the manner provided in section 40 :151–43 of this title, dissolve and abolish said fire district. Upon the adoption of such resolution the fire district shall be dissolved and abolished, and any moneys remaining in the hands of the treasurer of such fire district shall be turned over to the treasurer of such township."

R. S. 40 :151–43 provides as follows:

"Resolution for dissolution authorized; hearing and notice

The resolution provided for in section 40 :151–42 of this title shall not be adopted except upon the written application of at least twenty

freeholders of such fire district. Upon receipt of such application the township committee shall fix a time and place for the hearing of such application and shall cause the clerk of such township to give notice of the time and place when a hearing will be given thereon. Such notice shall be published at least once in a newspaper circulating in the township, at least five days before the holding of said meeting. At the time and place so designated such township committee shall hear all parties desiring to be heard, and at such meeting or at an adjournment thereof the resolution shall be adopted or rejected."

The suit in the Law Division has been subject to lengthy pretrial conferences and the taking of testimony for several days.

The Township of Woodbridge does not furnish fire protection to its citizens and their property; it has, however, fire districts.

Prior to February 15, 1951, the Township of Woodbridge was divided into 12 fire districts, the 12th district coming into existence in the year 1943 and the then commissioners entrusted its fire apparatus and equipment to Colonia Volunteer Chemical Hook and Ladder Company. In April, 1949, the fire commissioners transferred the custody and maintenance of the fire apparatus to a different fire company known as District No. 12 Volunteer Chemical Hook and Ladder Company and from then on there appears to have arisen a condition of jealousy and turmoil and confusion that would furnish real material for a pen more descriptive than mine.

The testimony reveals, first, that on September 15, 1950, the commissioners of Fire District No. 12 duly advertised a special meeting in accordance with *R. S.* 40:151–29. It appears that at this meeting some time after 8 o'clock the meeting was organized, a chairman and clerk of the meeting elected, and thereafter, somewheres between 8:15 and 8:45 P. M. a vote was taken resulting in a determination to raise $2,400 for the building of a fire house. The vote was taken by show of hands wherein the chairman of the meeting made his count and announced the result. It has been argued that while *R. S.* 40:151–29 does not in itself provide for a ballot,

the statutes must be read as a whole and *R. S.* 40:151–20 provides that polls shall be open for at least an hour; that *R. S.* 40:151–24 sets forth, in detail, how the question to be voted upon shall be submitted. It is admitted by the plaintiffs in the suit in the Law Division that no such procedure followed, but it is argued that there is no such requirement in the statute.

It is difficult to comprehend how a meeting can be held at some time after 8 o'clock on any given date without there being ballots and an opportunity for the voters to appear and register their approval or rejection during an announced period of time.

Assuming, however, that such line of reasoning is faulty, there is the further testimony that when certain individuals endeavored to enter the meeting, the doors were locked. A serious charge, and one that at first blush would seem incredulous, yet a police officer was produced who testified that while in his patrol car he saw a number of people standing in front of the meeting place and that he investigated and that he, too, found the doors locked and caused to be admitted one citizen and gave notice to those in charge that the doors must not remain locked. Surely, this cannot be the method of holding a public meeting to determine whether or not the voters of this fire district did approve or reject the raising of $2,400 to build a garage to house the fire fighting equipment of this district of Woodbridge Township.

Accordingly, I find the meeting of September 18, 1950, was not held in accordance with the statute, nor was it held in such fashion that voters seeking to gain entrance to the meeting could enter freely and register their vote.

These conclusions would seemingly have disposed of the Law Division suit but it will be noted that the defendant in the Law Division suit which was filed on January 13, 1951, sought and obtained permission to amend the answer by setting forth that on February 15, 1951, and subsequent to the filing of the suit in the Law Division, the township committee on February 15, 1951, in accordance with *R. S.*

40:151–42 and 43 abolished the 12th Fire District in the Township of Woodbridge. The parties seek a review of this action of the township committee and it must be considered because it has a most important bearing on the suit pending in the Chancery Division.

On February 14, 1951, the township committee held a hearing to determine whether to adopt or reject a resolution abolishing Fire District No. 12. A petition to abolish bearing 317 signatures was filed with the township committee containing the following words: "We, the undersigned respectfully ask the Township Committee to abolish Fire District 12."

A petition against the abolition of the Fire District No. 12 containing 334 signatures was also filed with the township committee containing these words: "Eight years ago, Fire District No. 12 was created because the people of this District and the Township Committee realized that we were desperately in need of Fire protection, therefore, we the undersigned vigorously protest any attempt at the abolishment of Fire District No. 12."

At the hearing many people spoke indulging mostly in personalities. At the close of the hearing, the chairman announced the township committee would require more time to give this matter further consideration and that a decision would be announced at a later date.

At the conclusion of the February 14, 1951, meeting, inquiry was made of the chairman of the township committee as to whether the regular election for fire commissioners and for the appropriating of funds to provide fire protection for the ensuing year, would be held as scheduled on February 17, 1951, and there was undisputed testimony before me that the chairman gave assurances that such election would take place. However, the next day, on February 15, 1951, five of the seven members of the township committee signed a written request, addressed to the chairman and clerk of the township committee, calling a special meeting of the township committee at 8 o'clock in the evening of February 15, 1951.

On February 15, 1951, the special meeting was held pursuant to said request attended by five committeemen who signed the request, two other committeemen were absent, and with no further notice the resolution abolishing Fire District No. 12 was passed, notwithstanding that *R. S.* 40:151–43, pertaining to dissolution, hearing and notice, states: "At the time and place so designated such township committee shall hear all parties desiring to be heard, and at such meeting or at an adjournment thereof the resolution shall be adopted or rejected."

There is no need for authority to be cited to substantiate that the special meeting as called by the township committee was not an adjourned meeting of the meeting of February 14, 1951, but was, in fact, a special meeting and not authorized by statute.

That the township committee had a hotly contested issue for decision may not be disputed. Counsel made a statement to this court that to give a decision on the night in question might have resulted in violence. Be that as it may, the statutes require that the abolition resolution shall be approved or rejected at a meeting advertised and scheduled, or at an adjournment thereof. Had this been done, all of the persons in attendance would have known as to what date and at what time the decision would be made. To adopt the policy of calling a special meeting without notice to any of the interested parties is not in accordance with the statute and is not an emphasis by this court of technicalities but a requirement of the observance of the statute and fair play.

Numerous witnesses testified at the hearing before this court reflecting the animosity between the members of the two respective fire companies. Altercations, interference with fire apparatus on its way to a fire call, complaints in police court, portray a condition difficult to understand without the benefit of actual hearing and observance of witnesses and spectators divided rather evenly in numbers, but indeed divided.

Counsel for the township committee, in arguing the action of the committee's adoption of the abolition resolution at a special meeting of February 15, 1951, rather than at the meeting of February 14, 1951, or at an adjournment of that meeting, maintains that Article IV, Section VII, par. 11 of the New Jersey Constitution requires that any law concerning municipal corporations shall be liberally construed and that the powers of the municipal corporation shall include, not only those granted in express terms, but also those of necessary or fair implication, or incidental to those which are expressly conferred and cites his authority.

There can be no quarrel with this argument. However, when the Legislature precisely prescribes how a municipality may exercise its powers by a procedure set forth in the statute, then the question is not one of liberal construction of the statutes prescribing the procedure but is a direction to the municipality which it may not ignore nor a court circumvent on some theory of liberal construction.

It will in no wise bolster this memorandum nor require the citing of authorities that municipalities are creatures of the Legislature and their powers are such as is given to the municipalities by the Legislature. The Legislature in giving such powers further prescribe the procedure of holding meetings and the passage of resolutions, and these directions must be strictly followed. The holding of meetings, the appropriation of moneys, the creation or abolition of fire districts, must be carried out in compliance with the statutes which authorize such actions by a municipal body and in the manner therein set forth.

As was recently held in *Grogan v. DeSapio*, 15 *N. J. Super.* 607, at 611 (*Law Div.* 1951), when the court, considering the passage of a resolution under attack said, "that valid action must emanate from a valid meeting is clear."

This is no instance of this court imposing its judgment in place of the parties to this suit. It is an instance of where this court says in so many words that the special meeting called by the fire commissioners on September 18, 1950, and

the meetings of February 14 and 15, 1951, held by the township committee were not valid meetings and not in accordance with the statutes made and provided.

Having determined that questions 1 and 2 must be determined in the negative, there is no need to consider the third and fourth questions. Accordingly, the suit in the Law Division will be dismissed.

■ Having determined that the action of the township committee in its attempt to abolish the 12th Fire District in the Township of Woodbridge contravenes the statute, it must necessarily follow that the action in the Chancery Division must also fail.

There will be judgments of dismissals in both suits. A form of judgment on notice may be presented.