256 P.2d 1068

**SHOUP VOTING MACH. CORP. v. BOARD OF COMMISSIONERS OF BERNALILLO COUNTY et al.**

No. 5559.

Supreme Court of New Mexico.

May 6, 1953.

Richard H. Robinson, Atty. Gen., Hilario Rubio, Ass't Atty. Gen., William J. Torrington, Ass't Atty. Gen., Paul Tackett, Dist. Atty., and Ramon Lopez, Ass't Dist. Atty., Albuquerque, for appellants.

Hannett & Hannett, Albuquerque, for appellee.

LUJAN, Justice.

This suit is for a declaratory judgment, pursuant to Section 25-601 of the 1941 Compilation, to determine the constitutionality of Chapter 192 of the Session Laws of 1951, which reads in part, as follows:

"Section 3. The county commissioners of any county in the State of New Mexico may adopt for use in elections and primary elections in one or more precincts, any kind of votingmachine approved by the state votingmachine committee, and thereupon such voting machines shall be used at any and all elections and primary elections, municipal, county, district, or state, held in that county or any part thereof, designated for voting, registering and counting votes cast at such elections and primary elections; and all school and bond elections also shall be conducted by the use of voting machines in those counties or parts thereof where such machines have been adopted.

\*　　\*　　\*　　\*　　\*　　\*

"Section 5. The county commissioners shall provide for the payment of the purchase price of voting machines to be used in such county by making proper provision therefor in the annual county budget within the limitations otherwise provided by law, and should the county commissioners deem it for the best interest of such county, they may provide for the payment thereof in annual installments not exceeding in all ten (10) years. Such voting machines shall be the property of the county paying for the same and such machines may be leased to other political sub-divisions of the county and payment shall be received by the county at such leased price per machine for each election day that such machines are used at a price to be fixed by the county commissioners. All moneys received by such county commissioners for the lease of such machines shall be credited and paid into the fund budgeted for the payment of such machines and the maintenance of the same. All sums over and above the amount necessary for the same and the maintenance thereof shall go into the general fund of such county."

On February 5, 1952, the Shoup Voting Machine Corporation entered into a contract with the Board of County Commissioners of Bernalillo County, which reads in part, as follows:

"That for and in consideration of the covenants and performances hereinafter set forth, Seller agrees to sell to Purchaser one hundred (100) Shoup vertical type electrically operated (combination electric and manual) voting machines, each of such voting machines to have a capacity of nine (9) party rows of fifty (50) office columns each with one (1) row of fifty (50) devices for voting for persons not nominated (commonly described as write-in candidates) and one (1) row of fifty (50) voting levers for voting on twenty-five (25) constitutional amendments, referendums or other matters, and shall be equipped with Primary mechanism and all other equipment necessary to accommodate all primary and general election ballots occurring in Bernalillo County, for the purchase price of Thirteen Hundred Ninety-Six Dollars ($1396.00) per machine F. O. B. Canton, Ohio, the total price One Hundred Thirty-Nine Thousand Six Hundred Dollars ($139,600.00)."

"It is further agreed that the Seller shall accept payment thereof in the following manner: Thirteen Thousand Six Hundred Dollars ($13,600.00) upon delivery to the Board of County Commissioners of Bernalillo County of the said one hundred (100) voting machines meeting the above specifications and the sum of Fourteen Thousand

Dollars ($14,000.00) on the 15th day of the next ensuing month of July, plus interest at the rate of three and one-half percent (3½%) per annum on the unpaid balance due to Seller at the time of payment and a like sum of Fourteen Thousand Dollars ($14,000.00) on the 15th day of July of each succeeding year until the full purchase price shall have been paid.

"It is further agreed and stipulated that the Board of County Commissioners of Bernalillo County shall pay interest at the above mentioned rate of three and one-half percent (3½%) per annum in semi-annual installments on the 15th day of January and the 15th day of July beginning on the 15th day of January, 1953, and that all payments of principal and interest herein provided shall be payable to the Seller at the main office of the Pennsylvania Company, Fifteenth and Chestnut Street, Philadelphia, Pennsylvania.

"It Is Further Agreed that Purchaser, the Board of County Commissioners of Bernalillo County, New Mexico hereby by these presents does agree to buy from the Seller the said one hundred voting machines for the aggregate price of One Hundred Thirty-Nine Thousand Six Hundred Dollars ($139,-600.00), said voting machines to meet the above specifications and to be the equivalent machine to the machine displayed by Seller to Purchaser in the month of October, 1951, in accordance with the method of payment hereinbefore set forth.

\*    \*    \*    \*    \*    \*

"It is further agreed and stipulated by and between the parties that delivery of the hereinabove mentioned one hundred machines shall be completed by Seller within sixty days after the entry of a final judgment or decree sustaining the validity of this agreement after the rendition of a favorable decision by the Supreme Court of New Mexico. Each of the parties hereto shall pay its own costs in obtaining an adjudication by the Supreme Court of New Mexico."

The case was submitted to the court upon the following stipulated facts:

"That on the 17th day of October, 1951 by motion duly adopted unanimously by the County Commissioners at a regular meeting, the Chairman of said Commission and the County Clerk of said County were authorized, empowered and directed to enter into a certain contract with the plaintiff for the purchase of electrical voting machines; a copy of said motion has been annexed to plaintiffs' Complaint as Exhibit A.

"That thereafter, on the 5th day of February, 1952 a contract was executed pursuant to said motion by the Acting Chairman of the County Commission and by the County Clerk for the purchase of the first one hundred of said voting machines; that after execution by said County officials, the contract was forwarded to the plaintiff in Pennsylvania where it was executed by the plaintiff. A copy of said contract appears as Exhibit B to plaintiff's Complaint.

"That said contract was entered into by said County officials under and pursuant to the authority granted by Chapter 192 of the 1951 Session Laws of the State of New Mexico."

Thereafter there was a financial statement certified to by H. R. MacGibbon, Manager of Bernalillo County, showing a budget balance of $448,266.44, which was filed with the court.

Based upon the above stipulated facts the court entered a judgment declaring the above Act unconstitutional.

The only error assigned in this court is:

"That the Court erred in holding as a matter of law that the contract between appellee and appellants was null and void because Chapter 192 New Mexico Session Laws of 1951 violates and contravenes Article 9, Section 10 of the New Mexico Constitution."

The above section of the constitution unequivocally forbids contraction of any debt for any purpose other than for erecting necessary public buildings or constructing or repairing public roads and bridges, and then, only after the proposition to *create such debt* shall have been submitted to the qualified electors of the county and approved by a majority of those voting thereon. Thus, it will be observed that the board of county commissioners could not carry out the provisions of the above Act without incurring an indebtedness which is forbidden by the Constitution. See, State ex rel. Capitol Addition Bldg. Comm. v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878; Henning v. Town of Hot Springs, 44 N.M. 321, 102 P.2d 25.

Under this section of the constitution, did the Board of County Commissioners have authority to bind the county by a contract with the plaintiff for the purchase of voting machines, to be furnished by it for the use of the county? Clearly the Board could not bind the county by the creation of a debt for the payment of which it had no power to pledge the county's credit. It is perfectly plain that the Board had no power to bind the county in this transaction, the words "no county shall borrow money *except* for the purpose (specified)" as used in the above section of the constitution is clear enough in its meaning to exclude the purchase of voting machines by pledging the general faith and credit of the county.

We are of the opinion, and so hold, that the above contract is violative of the article and section of the Constitution hereinabove referred to, and therefore is null and void. The judgment is affirmed.

It Is So Ordered.

McGHEE, COMPTON and COORS, JJ., concur.

SADLER, C. J., not participating.