357 P.2d 667

**CITY OF CLOVIS, Plaintiff-Appellee,**

v.

**Clemmie CRAIN, Defendant-Appellant.**

No. 6679.

Supreme Court of New Mexico.

Dec. 12, 1960.

Blythe & Norvell, Clovis, for appellant.

Hartley, Buzzard & Patton, Clovis, for appellee.

CHAVEZ, Justice.

This is a suit on a debt filed by appellee, City of Clovis, against appellant and others. The case relates to the collection of garbage and sewer assessments or service fees. From a judgment for appellee, City of Clovis, appellant brings this appeal.

Appellee has been collecting the garbage in Clovis, New Mexico, under garbage assessment rates set by a city ordinance. Appellant's property in Clovis is occupied by tenants. It has been stipulated that appellee's records show that appellant is indebted to appellee in the sum of $47.00 for garbage assessments and $33.00 for sewer assessments on appellant's property, said assessments accruing since 1952.

Appellant's first point is that Sections 14–32–6 to 14–32–11, N.M.S.A., 1953 Comp., provide an exclusive procedure for making and enforcing assessments. Appellee concedes that it has not followed the procedure set out in the cited statutes, but denies that the procedure set out therein is exclusive and argues that a municipality may, under its police power, collect the garbage itself, make a reasonable service charge therefor, and bring suit for debt upon a personal obligation. Appellee relies on § 14–32–4, N.M.S.A., 1953 Comp., as authority for the method to be pursued in enforcing garbage assessments. Said section provides:

"The legislative or governing bodies of cities, towns and villages may provide for the removal and disposal of garbage by the designation or selection of suitable person or persons as garbage collector or collectors, either by appointment, contract or otherwise, and shall prescribe the duties and compensation of such garbage collector or collectors so selected, by appointment, contract or otherwise; and may provide that such garbage collector or collectors shall receive and collect from every person owning or controlling any house, shop, residence, establishment or place of business within such city, town or village, a reasonable sum, the amount and manner of payment to be fixed by the legislative or governing bodies thereof. Such sum so paid may be either paid into the city treasury to defray the expenses of such garbage collection and disposal or may be retained by such garbage collector or col-

lectors as and for his or their compensation for the services so rendered, as such legislative or governing body may in their judgment deem best."

All of the statutory provisions under consideration are from Ch. 17, Laws of 1927, and must be read together. Mann v. Board of County Commissioners, 58 N.M. 626, 274 P.2d 145. As we construe § 14–32–4, supra, municipalities may provide for the removal and disposal of garbage by appointing suitable persons as garbage collectors, in which event, a reasonable sum set by the municipality shall be paid to said collectors as their compensation. Said sum may be paid to the city to defray the expense of such garbage collection or may be retained by the garbage collectors as compensation for their services. Or, the municipality may contract for the garbage removal. Gomez v. City of Las Vegas, 61 N.M. 27, 293 P.2d 984. Then, § 14–32–6, N.M.S.A., 1953 Comp., provides that whenever any person owning or controlling property refuses to pay the amount required by the ordinance for garbage removal, or refuses to remove it, then the municipality is authorized, at its own expense, to remove the garbage and make an assessment against the property for the cost of such removal. Then follows the procedure for the making of an assessment roll, publication of notice of the assessment, appeal and protest, delinquent assessments, claim of lien, recording, and for foreclosure of the lien.

The fact that appellee has proceeded as it has, instead of following the statutory provisions of Sections 14–32–6 to 14–32–11, supra, does not eliminate the legal question as to appellee's power to so proceed. Nowhere in § 14–32–4, supra, is there an express grant of authority to appellee to proceed as it did in this case. The rule is well established that where the statute directs in definite terms the manner in which municipal acts are to be exercised, such statutory method must be substantially followed. Fancher v. Board of County Com., 28 N.M. 179, 210 P. 237; Bibo v. Town of Cubero Land Grant, 65 N.M. 103, 332 P.2d 1020; McQuillin, Municipal Corporations, 3d ed., Vol. 2, § 10.27, p. 640. Also, the direction of definite and certain method of procedure in the grant of power to the municipality excludes all other methods by implication of law. McQuillin, § 10.27, supra. Moreover, the statute making the grant of power to the municipality must be strictly construed, and the municipality must keep closely within its limits. 38 Am. Jur., § 385, p. 74.

The only expressed method of collecting delinquent garbage assessments is provided in Sections 14–32–6 to 14–32–11, supra. McQuillin, Municipal Corporations, 3d ed., Vol. 14, § 38.262, p. 573, states the rule as follows:

"If no specific mode of enforcing assessments has been authorized by statute or charter, an action at law will

lie; but if a method has been provided, ordinarily, it is exclusive. * * * "

See also Berman v. City and County of Denver, 120 Colo. 218, 209 P.2d 754; Willman v. City of Corsicana, Tex.Civ.App. 1948, 213 S.W.2d 155; Commissioners of Fire Dist. No. 12 in Woodbridge Tp. v. Ziegenbalg, 16 N.J.Super. 607, 85 A.2d 223.

It has been held that a municipality is without power to change, by local law, the method of collecting taxes established by the legislature. City of Yakutat v. Libby, McNeill & Libby, D.C.Alaska, 98 F.Supp. 1011, 13 Alaska 378; County Securities v. Seacord, 278 N.Y. 34, 15 N.E.2d 179; Mount Vernon Trust Co. v. City of Mount Vernon, Sup., 12 N.Y.S.2d 120, affirmed 265 App.Div. 940, 39 N.Y.S.2d 416.

Being of the opinion that appellee, in attempting to collect garbage assessments in the manner which it pursued, was acting beyond the scope of its authority, the judgment of the trial court on this point is reversed and a judgment of dismissal of appellee's complaint on this point should be entered, including the granting of necessary injunctive relief to restrain appellee from collecting garbage assessments from appellant under the method pursued by appellee.

Our disposition of point I would generally make it unnecessary to pass upon other points raised in this appeal. However, we feel that the state of the pleadings and the importance of the questions raised are such that we are required to pass upon appellant's point IV. This raises the question of whether a property owner whose sewers have long since been paid for may be compeled to help finance extensions of the sewer system into new areas of the municipality, and to help finance new sewage disposal facilities made necessary by such extensions.

It was stipulated that ordinances were duly passed authorizing the issuance of sewer revenue bonds and that said ordinances contained recitals that the bonds were issued to finance construction of improvements, extensions, repairs and betterments of the sewer system, but that the primary purpose of each was as follows: 1937 issue—to build a sewage disposal plant; 1945 issue—to build a trunk line through the stockyards area; 1948 issue—to build an addition to the disposal plant and refund the 1945 issue; 1952 issue—to build a trunk line to the northern part of the city. It was further stipulated that all of the revenue bond issues were necessitated by the tremendous growth and expansion of the city, primarily in a northerly direction away from the older section of the city which includes the property involved herein; that all of said ordinances contained recitals that they were enacted for the public health, welfare and safety, by virtue of the authority contained in Art.

35, Ch. 14, N.M.S.A., 1941 Comp., except Ordinance No. 366 which recites that it was enacted in compliance with Ch. 57, Session Laws 1933, as amended by Ch. 4, Special Session Laws 1934.

It was further stipulated that the sewer lines serving appellant's property were financed by general obligation bonds which were retired prior to 1937; that since 1936 no general obligation bonds have been issued by appellee for said purpose; that appellee has issued four issues of revenue bonds for said purposes as follows: 1937—$53,000; 1945—$50,000; 1948—$247,000; and in 1952—$54,000; that the 1948 bond issue included $47,000 for refunding of the 1945 issue of revenue bonds; that the last of said 1937 bonds were retired during the fiscal year 1954–1955; and that the bonded indebtedness of appellee as a result of said bond issues is now $252,000, including bonds of the 1948 issue in the amount of $191,-000, and of the 1952 issue in the amount of $61,000.

It was also stipulated that said sewer assessments are placed in a sewer income fund from which the revenue bonds are retired and from which fund, since 1950, $45,280.16 has been spent for sewer construction, and $2,358.00 has been spent for plant improvement; and that the assessments are based on the number of outlets to the sewer, with a minimum of $2.00 per quarter for both residences and businesses, and a charge of 40¢ per quarter for all outlets in excess of five.

Appellant contends that the older sections of the city are paying for expansion of the sewer system to other areas and for new sewage disposal facilities made necessary by that expansion, although the portion directly serving her has already been paid for, and that she received no special benefit from the addition to the system. She claims that all portions of the system constructed after her portion was completed should have been financed by special assessments against abutting property.

Section 14–40–38, N.M.S.A., 1953 Comp., provides as follows:

"Municipal corporations having sewers shall have the right by general ordinance to levy annual maintenance or service charges, and special assessments upon improved and unimproved lots and land adjoining streets and alleys through which sewer pipes are laid, and upon premises and improvements otherwise situated but having sewer connection, either upon the front foot, volume of sewage, or number of outlets basis, such as may be just and reasonable, for the purpose of defraying the expense of maintaining, enlarging, extending, constructing, operating and keeping in repair said sewers and a suitable sewage disposal plant, and paying the interest and principal on

sewer revenue bonds issued to pay for any such construction, and any such charges shall constitute a lien upon the property so charged, superior to all other liens except general property taxes. Provided, any levy of special assessments on a front-foot basis on unimproved lots or lands shall not exceed fifty (50) per cent of the rate of assessment levied upon improved lots or land."

Appellant concedes that § 14-40-38, supra, may be interpreted as authorizing the use of sewer assessment revenues as appellee has done but contends that if it should be so interpreted, it is unconstitutional. Appellant further argues that § 14-40-38, supra, is ambiguous and that we should construe said section by holding that the wording up to the first comma is the only part that has reference to maintenance or service charges, and that the balance of the section, after the first comma, has reference to special assessments.

We cannot agree with appellant's contention. It seems to us that under said section municipality may levy annual maintenance or service charges and special assessments, for the purpose of defraying the expense of maintaining, enlarging, extending, constructing, operating and keeping in repair, sewers and suitable sewage disposal plants, and paying the interest and principal on sewer revenue bonds issued to pay for any such construction.

In Chapman v. City of Albuquerque, 65 N.M. 228, 335 P.2d 558, this court considered § 14-40-38, supra, and we held that this section of the statute was not unconstitutional and that this section expressly authorized an assessment for maintenance or repair

Rhyne, Municipal Law, § 20-5, p. 462, states the rule as follows:

"* * * The fact that property owners paid special assessments or taxes for the construction of sewers does not entitle them to free connection and use of the sewerage system and a municipality may impose a sewer service charge for the use of its existing sewerage facilities.

"It is the majority rule that sewer service charges are neither taxes nor assessments, but are tolls or rents for benefits received by the user of the sewer system; * * *."

It has been held that only a discrimination in the classification of consumers for water and sewer rate purposes by city ordinances, which is arbitrary and without reasonable factual basis or justification, is invalid. Caldwell v. City of Abilene, Tex. Civ.App.1953, 260 S.W.2d 712.

It is claimed that the sewer service charges against appellant are unreasonable and arbitrary. The burden of proof of such claim was upon appellant. 73 C.J.S. Public Utilities § 26, p. 1048. Under our

statute, a municipality may base the service charge or special assessment upon the number of outlets basis and we cannot say that a minimum of $2.00 per quarter for both residences and businesses, and a charge of 40¢ per quarter for all outlets in excess of five, are unreasonable and arbitrary.

Appellant further claims that since appellee's figures show that it made $84,511.02 on the operation in eleven years, even after paying all of the sanitation department expenses, that the sewer service charges are excessive. We do not agree. In Antlers Hotel, Inc. v. Town of City of New Castle, Wyo.1959, 341 P.2d 951, 954, the same contention was made. The Town accumulated a sum of money in excess of $73,000. The Wyoming Supreme Court answered this argument as follows:

> " * * * Furthermore, we could not say that even the amount of $73,000 would be excessive. It could always be used for the purpose of paying the principal and interest on the bonds so that we cannot say in what respect the appellants would be prejudiced."

See also Cramer v. City of San Diego, 164 Cal.App.2d 168, 330 P.2d 235; City of Maryville v. Cushman, 363 Mo. 87, 249 S. W.2d 347.

▇ Furthermore, the ordinances in question contained recitals that they were enacted for the public health, welfare and safety of the inhabitants of the municipality. It is unquestioned that municipalities have authority to do all acts and make regulations necessary for the promotion of health or the suppression of disease. Section 14–21–31, N.M.S.A., 1953 Comp. There is no more appropriate method of promoting public health than by a municipality establishing an adequate sewage disposal system to all sections of a municipality. Cities are continuously growing and extending their boundaries and the municipality's responsibility is not lessened by such growth. We hold against appellant's contentions under point IV.

There is no merit in appellant's point V. There is no evidence in the record that appellee contemplates the transfer of any surplus funds from the sewer income fund to the general fund.

Our disposition of this case makes it unnecessary to pass on other points raised by this appeal.

The judgment of the district court on points IV and V is affirmed, and the case is remanded for proper action by the district court in conformity with the views herein expressed.

It is so ordered.

CARMODY, MOISE and NOBLE, JJ., concur.

COMPTON, C. J., not participating.