¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does Oklahoma Constitution Article X, Section 9C(b), which authorizesan emergency medical service district ("EMS District") to issue bonds tofinance the acquisition of emergency vehicles, preclude the district fromusing operational funds generated through the millage provided insubparagraph (a) of Section 9C to acquire emergency vehicles such asambulances through a lease-purchase agreement?
¶ 1 You inquire whether an EMS District is limited to the issuance of bonds as the means to purchase emergency vehicles. In particular, you ask whether the district may use proceeds of an ad valorem tax levy designated to fund the operation of the district to acquire ambulances pursuant to a lease-purchase agreement. Article X, Section 9C of the Oklahoma Constitution and the Emergency Medical Service District Budget Act ("Act"), 19 O.S. 2001 Supp. 2009, §§ 1701 — 1723, govern EMS Districts. Article X, Section 9C authorizes the establishment of EMS Districts and sets forth the manner in which an EMS District is funded. The Act establishes budgeting procedures for EMS Districts established pursuant to Article X, Section 9C.
 An EMS District is Not Limitedas the to the Issuance of Bondsas theOnly Source of Funding for the Purchase of Ambulances.
¶ 2 Section 9C(a) authorizes a tax levy to fund the general operations of the district. Registered voters in the proposed district may simultaneously vote to establish the district, and "authorize a tax levy not to exceed three (3) mills for the purpose of providing funds for thepurpose of support, organization, operation and maintenance of districtambulance services." Okla. Const. art. X, § 9C(a) (emphasis added). If approved by voters, "a special annual recurring ad valorem tax levy of not more than three (3) mills on the dollar of the assessed valuation of all taxable property in the district shall be levied. . . . This special levy shall be in addition to all other levies and when authorized shall be made each fiscal year thereafter." Id.
¶ 3 Another means of funding, specifically for the acquisition of emergency vehicles, is found in subsection (b), which provides: "[a]ny district board of trustees may issue bonds, if approved by a majority vote at a special election for such purpose. . . . Such bonds shall beissued for the purpose of acquiring emergency vehicles and otherequipment and maintaining and housing the same." Okla. Const. art. X, § 9C(b) (emphasis added). Districts issuing such bonds "shall levy a special annual ad valorem tax . . . for the payment of principal and interest on outstanding bonds." Okla. Const. art. X, § 9C(d). Districts are also "empowered to charge fees for services, and accept gifts, funds or grants from sources other than the mill levy." Okla. Const. art. X, § 9C(i).
¶ 4 The purposes for which proceeds of the general operations tax levy in subsection (a) may be used are broad enough to encompass the purchase of emergency vehicles. Emergency vehicles are necessary equipment for the operation and maintenance of ambulance services. Neither subsection (b) nor any other provision of Section 9C expressly provides that issuance of bonds is the only funding mechanism for purchase of ambulances. The use of the mandatory "shall" in subsection (b) limits the use of bond proceeds to the acquisition, maintenance and housing of emergency vehicles and other equipment. Bonds may not be issued to fund other expenditures. The provision does not mean that the issuance of bonds is the only means by which an EMS District may purchase ambulances.
¶ 5 The proposition that sources of revenue other than bond proceeds may be used for the purchase of ambulances is further supported by subsection (i) of Article X, Section 9C. Subsection (i) provides that "[s]uch districts shall be empowered to charge fees for services, and accept gifts, funds or grants from sources other than the mill levy." Okla. Const. art X, § 9C(i). The constitutional provision does not contain any express limits on the types of expenditures that may be made with such revenues.
¶ 6 In addition, the Act authorizes a district to maintain a "[c]apital improvement fund, to account for financial resourcessegregated for acquisition, construction or other improvement related tocapital facilities other than those financed by general long-term debt[.]" 19 O.S. 2001, § 1718[19-1718](4) (emphasis added). The Attorney General has interpreted the statute to mean that EMS Districts may accumulate income in a special fund which may be used to finance capital improvements. A.G. Opin. 87-139, at 255.
¶ 7 The purchase of equipment such as emergency vehicles is a proper expenditure of a capital improvement fund. Although the term "capital improvement" is not defined in either the Attorney General Opinion or the Act, other statutory definitions provide guidance. The Fire Protection District Budget Act includes the purchase of autos and trucks as types of capital outlays. 19 O.S. 2001, § 901.47[19-901.47](5). The Oklahoma Municipal Code defines "capital improvement" to mean "all items and articles, either new or replacements, not consumed with use but only diminished in value with prolonged use." 11 O.S. 2001, § 17-110[11-17-110]. An ambulance fits within both of these definitions.
¶ 8 An EMS District is not limited to the issuance of bonds as the only source of funds for the purchase of emergency vehicles. A district may also use proceeds from its three mill general operations levy, fees for services, gifts, grants and funds accumulated in a capital improvement fund. Whether an EMS District may use these various sources of funds to acquire ambulances by lease-purchase agreement is analyzed below.
 An EMS District May Acquire Ambulances Pursuant to a Lease-Purchase Agreement
¶ 9 Neither Article X, Section 9C nor the Act expressly authorize or prohibit an EMS District from entering into lease-purchase agreements. We must then examine whether the authority to lease-purchase may be implied from the powers expressly granted to an EMS District.
 We recognize that generally, an officer or agency has, by implication and in addition to the powers expressly given by Constitution or statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the constitutional provision or statute granting the express powers.
Okla. Pub. Employees Ass'n v. Okla. Dep't of Cent. Serv., 55 P.3d 1072,1084 (Okla. 2002). In addition to the powers discussed above, Article X, Section 9C vests the board of trustees with the following general powers:
 Such board of trustees shall have the power and duty to promulgate and adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives of these provisions. . . .
 The district board of trustees shall have the additional powers to hire a manager and appropriate personnel, contract, organize, maintain or otherwise operate the emergency medical services within said district and such additional powers as may be authorized by the Legislature.
Okla. Const. art. X, § 9C(a).
¶ 10 The Oklahoma Supreme Court held that "[a] constitutional amendment should be construed in consideration of its purpose and be given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it." Smith v. State Bd. of Equalization,630 P.2d 1264, 1267 (Okla. 1981). The authority vested in EMS Districts by Article X, Section 9C to adopt procedures necessary to carry out the objectives of providing ambulance services and to contract, maintain, or otherwise operate emergency medical services may be practically interpreted to encompass the use of a lease-purchase agreement to acquire ambulances. The use of such a purchasing method may be necessary to effectively accomplish the duty of providing emergency medical services.
¶ 11 Further support for the authority of an EMS District to lease-purchase ambulances is found in the Tenth Circuit Court of Appeals opinion in Allstate Leasing Corp. v. Board of County Commissioners,450 F.2d 26 (10th Cir. 1971). The court held that the power to lease was included in the power to purchase. Id at 29. When reaching this conclusion the court rejected as unpersuasive the argument that since the Legislature enacted laws expressly authorizing other entities to lease, the power could not be implied. Id. While Section 9C does not expressly authorize an EMS District to make purchases, to construe the provision to mean that the EMS District had no purchasing authority would be an absurdity. See Cox v. Dawson, 911 P.2d 272, 281 (Okla. 1996). Purchasing is a necessary task for the maintenance and operation of an EMS District.
¶ 12 Nevertheless, the Attorney General has determined that Article X, Section 9C does not allow an EMS District to borrow money or incur long-term debt other than through the issuance of bonds after election pursuant to Section 9C(b) of the Constitution. A.G. Opin. 87-139, at 255. Depending on how it is structured, a lease-purchase agreement may constitute a loan or long-term debt. A.G. Opin. 02-43, at 260-61. Generally, a lease-purchase agreement "calling for payments on a fiscal year basis, under which the governmental entity can terminate the agreement and `walk away' at the end of a given fiscal year, is not, for State law purposes, a `debt' under the Constitution." Id at 259 (citingHalstead v. McHendry, 566 P.2d 134,138 (Okla. 1977); In re Okla. CapitolImprovement Auth., 355 P.2d 1028, 1031 (Okla. 1960)). Whether a particular lease-purchase agreement contemplated by an EMS District constitutes long-term debt or borrowing is a question of fact outside the scope of an Attorney General Opinion. 74 O.S. 2001, § 18[74-18](b)(A)(5).
¶ 13 An EMS District may use revenue from its general operations levy, fees for services, gifts, grants or funds accumulated in a capital improvement fund to lease-purchase ambulances, provided that the lease-purchase agreement is structured in such a manner that the agreement does not constitute borrowing or long-term debt.
¶ 14 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. An emergency medical service district is not limited to the proceeds of the issuance of bonds authorized by Article X, Section 9C(b) of the Oklahoma Constitution as the only source of funds for the purchase of emergency vehicles. A district may also use proceeds from its general operations levy, fees for services, gifts, grants and funds accumulated in a capital improvement fund. Okla. Const. art X, § 9C(a); Okla. Const. art X, § 9C(i).
 2. An emergency medical service district may acquire ambulances through a lease-purchase agreement, provided that the agreement is structured in such a manner that the agreement does not constitute borrowing or long-term debt. Okla. Const. art X, § 9C(a); A.G. Opin. 87-139, at 255; A.G. Opin. 02-43, at 260-61.
 3. Whether a particular lease-purchase agreement contemplated by an EMS District constitutes borrowing money or long-term debt is a question of fact outside the scope of an Attorney General Opinion. 74 O.S. 2001, § 18[74-18](b)(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA BALZER Assistant Attorney General *Page 1